JAMES NEEDHAM, JR. & another *vs.* EDWIN A. HILL.

Suffolk.   March 10. — June 28, 1879.   MORTON & ENDICOTT, JJ., absent.

If a tenant in common of chattels so appropriates them to his own use as to ren-
der any future enjoyment of them by his cotenant impossible, the latter may
maintain an action of tort in the nature of trover against him.

CONTRACT for breach of the following instrument, signed by
the plaintiffs, declared on as a lease, with counts in tort for the
conversion of some of the articles named therein:

"Know all men by these presents: That I, J. Needham,
Jr. and J. R. Needham, 26 Greenleaf Street, of Boston, in the
county of Suffolk and Commonwealth of Massachusetts, have
hired and received of E. A. Hill the following described goods
and chattels, viz. one undivided half of interest in the printing-
office at No. 9 Change Avenue, Boston, composed of one Gor-
don press, medium, about seventy-three fonts of type, and cases
and stands for same; one imposing stone, frame, furniture and
fixtures, office desk, tables, one card-cutter, stove and funnel,
all the signs used; all tools and fixtures at present used in
said office at present time, but not including the stock, clock or
books of account.   For the use or rent of which we promise to
pay said Hill, or his legal representatives, the sum of twenty-
five dollars the first day of each and every month, until the sum
so to be paid for use or rent shall amount to the sum of three
hundred dollars, and at which time all rent and claim of said
Hill, or his legal representatives, for said goods and chattels,
are to cease.   But in case of neglect by us to pay for use and
rent, as aforesaid, before such time as said sums, so to be paid
for use or rent, shall amount to said sum of three hundred dol-
lars, said Hill and his legal representatives shall have the right
and privilege of entering any house or place in which said goods
and chattels may be, and of removing the same therefrom with-
out being taken or deemed guilty of any manner of trespass or
tort; and therefore we shall and will waive all right to demand,
recover or receive from said Hill, or his legal representatives,
any money or thing whatsoever, which may have been paid him
by us for or on account of said furniture, goods or chattels; and
we promise and agree that we will not injure, sell, convey,

remove or ré-let said goods or chattels; and that in case of any default or neglect to pay for use or rent as aforesaid, we will, on demand, return the said goods or chattels; and that in case of any default, or neglect to pay, for use or rent, as aforesaid, we will, on demand, return said goods or chattels to said Hill, or his legal representatives. But so long as said lessees shall pay the rent, as above stated, they shall hold equal interest with the lessor in possession of said goods. Witness our hands and seals this twelfth day of September, A. D. 1874."

Answer: 1. A general denial. 2. That the plaintiffs, by a bill of sale sold to the defendant "all their right, title and interest in and to said undivided one-half interest in all the property mentioned in the lease declared upon."

Trial in the Superior Court, before *Putnam*, J., who reported the case for the consideration of this court in substance as follows:

The plaintiffs offered evidence tending to show the following facts: At the time the lease declared on was executed, the property named therein was in an office in Change Avenue, in which the plaintiffs carried on the business of job printing, with the use of said property. Some four or five months after, the defendant agreed with them that the property might be removed to a room in Winter Street, which the plaintiffs had hired and the rent of which they paid; and it was removed accordingly, and the plaintiffs continued to carry on the same business at the latter place, in the same way as before. On July 29, 1875, the defendant came and took away roller-arms, the fly-wheel and fonts of type named in the lease, the plaintiffs at the time forbidding his doing so, and refused to tell them where he had put them, and they had no use of them after that time. At the time of this taking, the plaintiffs had paid, as they fell due, all the instalments called for by the lease, excepting the last one, which was not then due, and had kept and performed all the agreements by them to be performed. On the next day after the taking, they went to the defendant and paid him the remaining instalment, being the last payment due under the lease. On October 4, 1875, the plaintiffs reconveyed all of the property named in the lease, including that taken away, to the defendant, and gave him a bill of sale of it.

The plaintiffs proposed to offer evidence of the reasons and motives which induced them to make this bill of sale, but the judge excluded the evidence as immaterial, and the plaintiffs excepted. The plaintiffs also proposed to offer evidence for the purpose of showing that they had engagements to do work and perform contracts of printing which they were unable to perform by reason of these articles being taken away from them; but this evidence was excluded, and the plaintiffs excepted. The plaintiffs also put in evidence of the value of the property at the time of the taking, and that the part of the property which the defendant took away was of no value to them separated from the rest.

The judge thereupon ruled that the plaintiffs had no such exclusive possession as would entitle them to recover upon their counts in tort, and were only entitled to recover nominal damages upon their counts in contract. A verdict was taken accordingly for the plaintiffs in the sum of $1 upon the counts in contract. If the rulings were correct, judgment was to be entered on the verdict; otherwise, a new trial was to be ordered.

*F. A. Perry*, for the plaintiffs.

*G. H. Towle & P. W. Locke*, for the defendant.

SOULE, J. Under the most favorable construction for the defendant which can be given to his so-called lease to the plaintiffs, they became tenants in common with him of the "printing-office," or printer's implements, consisting of the articles specially enumerated in part, and partly described in general terms in the lease. While they were such cotenants, and had fully complied with all the terms of the contract under which they held, the defendant unlawfully entered the premises of which they had the exclusive control, and effectually destroyed the usefulness of the "printing-office," by so mutilating the press that it was unfit for use in consequence of the removal by him of essential parts of it. He also carried away several fonts of type. The articles which he removed were incapable of use by him. Those which he left were incapable of use by the plaintiffs. The establishment was put by him into such condition as to preclude any future enjoyment by the plaintiffs of the "printing-office," or of the chattels of which it was composed. It is well settled that, when a tenant in common of chattels has destroyed them, or sold them, or so appropriated them to his own use as to

render any future enjoyment of them by his cotenant impossible, he has so converted them to his own use that an action of trover, or of tort in the nature of trover, may be maintained by his cotenant against him. *Daniels* v. *Daniels*, 7 Mass. 135. *Weld* v. *Oliver*, 21 Pick. 559. *Delaney* v. *Root*, 99 Mass. 546. *Warner* v. *Abbey*, 112 Mass. 355. This is precisely the position into which the defendant has brought himself. The ruling of the learned judge who presided at the trial in the Superior Court, that the plaintiffs could not recover on their counts in tort, was erroneous, and they are entitled to a        *New trial.*