Patricia L. BOWLBY, Appellant–
Intervening Defendant

v.

NBD BANK, f/k/a Midwest Commerce
Banking Company, Appellee–
Plaintiff

William W. Mills, Ed Wilsey, State of
Indiana, Treasurer of Elkhart County,
Architects Incorporated, Frances L.
Mills, Appellees–Defendants

FM Properties, Appellee–Receiver.

No. 20A05–9309–CV–349.

Court of Appeals of Indiana,
Fifth District.

Oct. 12, 1994.

Charles S. Leone, John D. Stoddard, Nemeth, Masters & Leone, South Bend, for appellant.

James R. Byron, Thorne, Grodnik, Ransel, Duncan, Byron & Hostetler, Paul E. Becher, J. Scott Troeger, Barnes & Thornburg, Elkhart, for appellees.

BARTEAU, Judge.

The trial court appointed FM Properties as a receiver over property owned by William Mills and subject to five mortgages held by NBD Bank, formerly known as Midwest Commerce Banking Center. NBD requested the receivership when it filed a foreclosure action on the mortgages. Patricia Bowlby leased a portion of the property from either Mills or the Brookdale Club, the business operated on the mortgaged property, and appeals the trial court's order approving the receiver's rejection of her lease. She raises two issues on appeal, but because we reverse we address only the issue whether the trial court's order approving rejection of the lease violated Bowlby's due process rights guaranteed by the United States and Indiana Constitutions.

### FACTS

Mills borrowed money from NBD and secured the loans with mortgages on real estate and improvements known as the Brookdale Club. The mortgages also included all rents from leases pertaining to that facility. When Mills defaulted on the loans, NBD filed a complaint to foreclose on the mortgages and requested the appointment of a receiver to take custody of and manage the Brookdale facility. On January 13, 1993, the trial court appointed a receiver and on January 15, 1993, appointed a successor receiver. That order was amended on January 22, 1993, and authorized the receiver, FM Properties ("Receiver"), to act as receiver of the real estate known as the Brookdale Club and "all property used in the operation of the Brookdale Club and any related enterprise operated on the real estate" and to "take possession of the Brookdale Club for the purpose of operating, managing, protecting and preserving the same." Receiver was also authorized to continue the business operated on the real estate and was given all "appropriate, necessary, and usual powers to carry out his duties and exercise his rights and effect the purpose" of the receivership as provided in Ind. Code 32–8–16–7.

Receiver filed a petition for court approval of rejection of leases on February 3, 1993, requesting the court to approve rejection of, among others, the lease of Patricia Bowlby, and further requesting the right to "use all personal property (except liquor stock) now existing in the kitchen, lounge, bar and dance floor area of the Brookdale Club in the operation of the business of the Brookdale Club pending Court determination of the ownership of said property...." On the same date, the trial court approved rejection of the lease and authorized Receiver to "retain custody of and use all personal property (except liquor stock) now existing in the kitchen, lounge, bar and dance floor area of the Brookdale Club in the operation of the Brookdale Club, pending Court determination of any claims of ownership of said property." It apparently was undisputed that the liquor stock belonged to Bowlby and she was permitted to retrieve it.

On February 16, Bowlby filed a motion to intervene as defendant in the action in order to assert her interest as a tenant of the property. She was allowed to intervene and subsequently filed a motion to correct errors in the trial court's order approving rejection of her lease, raising the sole issue that the trial court's order violated her due process rights by depriving her of real and personal property interests without notice or opportu-

nity for hearing. The trial court denied the motion to correct errors and this appeal ensued. We heard oral argument on September 12, 1994.

### DISCUSSION

■ Bowlby argues that her due process rights have been violated because she was denied notice and an opportunity for hearing before the trial court authorized rejection of her lease and seizure of her personal property. It has been suggested, and we agree, that the acts of a court-appointed receiver are "state action" for due process purposes, *see Lebbos v. Judges of Superior Court, Santa Clara Co.* (9th Cir.1989), 883 F.2d 810, 818 n. 10, and neither Receiver nor NBD argue the lack of state action.

*Personal Property*

■ Bowlby's complaint regarding the personal property is without merit. She has not yet been deprived of personal property of which she claims ownership. The trial court merely authorized Receiver to retain custody and use of the property pending an adjudication of any adverse claims. Bowlby was given notice of this and an opportunity to have her claims of ownership heard. Thus, as to the personal property, Bowlby has been afforded due process protections.

*Lease*

■ Bowlby contends her due process rights were violated when she was deprived of her property interest in the lease without notice and an opportunity for a hearing. Receiver and NBD argue that Bowlby was not deprived of a property interest. Receiver argues that once it was appointed, Bowlby no longer had a leasehold interest in the Brookdale property because Receiver was not a party to the lease and Bowlby would not have an interest until such a time as the Receiver chose to accept the lease. Receiver draws an analogy to *Downtown Auto Parks, Inc. v. City of Milwaukee* (7th Cir.1991), 938 F.2d 705, *cert. denied* 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 657 (1991). In that case, the City of Milwaukee decided not to renew the parking lot leases held by Downtown Auto Parks. Downtown Auto Parks

sued the City of Milwaukee, claiming that City had deprived it of property rights without due process of law. The court rejected the due process argument because Downtown Auto Parks did not have a sufficient interest to warrant Fourteenth Amendment protection. Downtown Auto Parks was not *entitled* to have its leases renewed. "Since the City had discretion to award the leases to a competitor of plaintiff, plaintiff had no property subject to Fourteenth Amendment protection." *Id.* at 710. We do not agree that Bowlby's situation is the same. It cannot be disputed that a leasehold is a property interest. *See New American Oil & Mining Co. v. Troyer* (1906), 166 Ind. 402, 77 N.E. 739; *Haywood v. Fulmer* (1892), 158 Ind. 658, 32 N.E. 574. At the time Receiver was appointed, Bowlby clearly had a property interest pursuant to the lease and not a mere expectation of an interest. The question is whether that property interest was entitled to due process protection.

■ Not all property interests are entitled to due process protection. *Brown v. Brienen* (7th Cir.1983), 722 F.2d 360. In *Brown* the Court identified three factors to consider in deciding whether there has been a denial of due process: 1) the importance of the interest of which the plaintiff has been deprived, 2) the risk that the deprivation was erroneous because a particular procedural safeguard was not provided, and 3) the burden to the state of providing it.

In *Brown*, employees of a sheriff's department claimed their due process rights were violated when the sheriff breached his promise to give them compensatory time off without a prior administrative hearing. The Court rejected the claim:

To summarize, the "property" of which the plaintiffs were deprived, if property it is in the Fourteenth Amendment sense (which as we have said we doubt), is far down on the scale of Fourteenth Amendment interests. In addition, the deprivation was merely a postponement. Indeed, since the plaintiffs' loss was of a kind readily compensable in monetary terms, it may even be doubted whether any deprivation in the constitutional sense has yet occurred, or will occur unless and until the state courts

turn down a meritorious contract claim. And the additional procedural safeguard that the plaintiffs seek, a pre-deprivation administrative hearing, would have been burdensome to the local officials who would have had to conduct it but of little utility to the plaintiffs in inducing the sheriff to change his mind.

*Id.* at 366.

◼ Similarly, Receiver argues that even if Bowlby was deprived of a property interest, she was not entitled to pre-deprivation due process protection for two reasons. First, even if she had been given notice and a hearing, the result would have been the same because Receiver had absolute discretion to reject the lease. Second, Receiver argues that Bowlby's state remedies for breach of contract are adequate to make her whole for what is essentially a monetary injury. Thus, Receiver argues, the factors to consider weigh against determining that she was entitled to due process protections.

◼ We do not agree. First, we have already stated that Bowlby has a property interest in the leasehold. *See Troyer,* 166 Ind. 402, 77 N.E. 739. That it is an important interest worthy of due process protections is seen in the way leases are treated in bankruptcy proceedings. The Bankruptcy Code recognizes the possessory property interest held by the lessee and provides mechanisms by which the lessee can protect its interest when the bankruptcy trustee for the debtor-lessor's estate rejects the lease. The lessee has the choice to remain in possession and off-set any damages resulting from the trustee's rejection of the lease (i.e., discontinuing services the lessor was obligated to provide under the lease) against the rent provided for in the lease. 11 U.S.C. § 365(h); *In re Upland/Euclid, Ltd.* (9th Cir. BAP 1985), 56 B.R. 250; *Solon Automated Services, Inc. v. Georgetown of Kettering, Ltd.* (Bankr.S.D.Ohio 1982), 22 B.R. 312.[1] The trustee can reject an unexpired lease, but cannot terminate the lessee's possessory interest in the leasehold.

◼ Second, Receiver argues that the risk of an erroneous deprivation because procedural safeguards were not provided is non-existent because Receiver has absolute discretion to reject leases, citing *Fisher v. Columbia Nat. Bank* (1913), 54 Ind.App. 558, 103 N.E. 119. It is true that in *Fisher* this court said that "a receiver for a *lessee* is entitled to elect whether he shall take and adopt a lease made by said lessee, or whether he shall refuse to take and adopt said lease. . . ." *Id.,* 54 Ind.App. at 560, 103 N.E. at 120 (emphasis added). This view is consistent with the rule recognized in other jurisdictions regarding the authority of a receiver of a lessee to reject the lease. *See generally* 66 Am.Jur.2d § 223. However, nothing indicates that the authority is absolute. On the contrary, it is subject to court approval, *see* Ind.Code 34–1–12–7, and in determining whether to seek approval to reject a lease, the receiver should be guided by considerations as to whether the lease would be "unduly burdensome or imperil the fund entrusted to his care." 66 Am.Jur.2d at § 224. Presumably, the trial court can deny approval to reject a lease if the receiver does not make the proper showing. We cannot say that simply because a receiver elects to reject a lease, court approval is a foregone conclusion such that allowing the tenant to be heard would be an exercise in futility. We also see a distinction between the situation where the receiver has been appointed for the *lessee,* as in *Fisher,* and here where the receiver was appointed for the *lessor.* When a receiver of the lessee rejects a lease, that action does not deprive anyone but the receiver of a property interest. However, when a receiver of the lessor rejects a lease, the lessee is deprived of its property interest in that lease. Thus, the consequences of a

---

1. Similarly, NBD argued at oral argument that Bowlby was not dispossessed of her leasehold interest; rather, in rejecting the lease, Receiver merely terminated its obligations under the lease. This argument, however, ignores the explicit order of the trial court. The trial court's order states that the lease held by Bowlby is "cancelled, and null and void, and any and all leasehold interest in the property ... existing by virtue of said lease[] is forever *terminated*...." R. 116 (emphasis added). The effect of this order was to deprive Bowlby of her property interest in the leasehold.

rejection are greater where the receiver has been appointed for a lessor.

■■■ Third, the burden to the State, through Receiver, to provide due process protections here would not be great at all. Receiver knew Bowlby was a tenant with an interest in the property. It could easily have sent notice to Bowlby that it was seeking court approval to reject the lease, thereby giving Bowlby an opportunity to be heard.

We conclude that the relevant factors weigh in favor of a determination that Bowlby's property interest in the leasehold was entitled to due process protections. Bowlby has an important property interest in the leasehold and because Receiver does not have absolute discretion to reject the lease, we cannot say that the risk of an erroneous deprivation because Bowlby was not given an opportunity to be heard is small. Finally, the burden on the State to provide Bowlby due process protections here is small.

The trial court's order approving Receiver's rejection of Bowlby's lease deprived Bowlby of her property interest without the due process of law to which she was entitled. The trial court's order is reversed and this case is remanded to the trial court.

REVERSED.

SHARPNACK, C.J., and KIRSCH, J., concur.